# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

ANTONIO SWEATT, )
)
    Plaintiff/Appellant, ) **Lake Circuit No. 98-7744**
)
VS. ) **Appeal No. 02A01-9808-CV-00227**
)
DONAL CAMPBELL, et al, )
)
    Defendants/Appellees. )

**FILED**

**February 25, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

### APPEAL FROM THE CIRCUIT COURT OF LAKE COUNTY
### AT TIPTONVILLE, TENNESSEE
### THE HONORABLE R. LEE MOORE, JR., JUDGE

**ANTONIO SWEATT, pro se**
Only, Tennessee

**PAUL G. SUMMERS**
**Attorney General and Reporter**
**MICHAEL MOORE**
**Solicitor General**
**PAMELA S. LORCH**
**Assistant Attorney General**
Nashville, Tennessee
Attorney for Appellees

**AFFIRMED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**DAVID R. FARMER, J.**

**HOLLY KIRBY LILLARD, J.**

Antonio Sweatt, a *pro se* inmate, has appealed the trial court's dismissal of this civil

rights action that was brought against several individually named Tennessee Department of Correction (TDOC) employees. Based upon the following, we affirm the trial court's dismissal.

**Facts and Procedural History**

On February 12, 1998, Sweatt filed a complaint against Donal Campbell, Fred Raney, James Dukes, Steven E. Gatlin, Pamela Blakley, and C.O. Minnick (hereafter collectively referred to as the "Defendants"), naming all Defendants in their individual capacities. Campbell was alleged to be the TDOC Commissioner, and the remaining defendants were alleged to be TDOC employees who worked at the TDOC's Northwest Correctional Complex, located in Tiptonville, Lake County, Tennessee. Raney was the Warden; Dukes was the Associate Warden of Operations; Gatlin was an administrative lieutenant; Blakley was a correctional officer and the mail room clerk; and Minnick was a correctional officer.

Sweatt's action was based upon federal claims of civil rights violations. The claims were brought under sections 1983, 1985(3), and 1986 of Title 42 of the United States Code, based upon alleged deprivations of civil rights,[1] conspiracies to interfere with civil rights,[2] and neglect to prevent conspiracies.[3] The civil rights that were alleged to have

---

1.  Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . . .

42 U.S.C. § 1983 (1994).

2.  If two or more persons in any State . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State . . . from giving or securing to all persons within such State . . . the equal protection of the laws; . . . [and] if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C.S. § 1985(3) (1989).

3.  Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in the preceding section, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such

been violated included Sweatt's right to adequate, effective, and meaningful access to the courts, his First Amendment right to petition the government for a redress of grievances (without retaliation), and purported state statutory rights.

According to Sweatt's original complaint, along with its attached exhibits, two separate prison facilities, formerly named the Lake County Regional Correctional Facility and the Northwest Correctional Center, were consolidated and renamed as the Northwest Correctional Complex. Prior to consolidation, the facility in which Sweatt was imprisoned had its own mail room. After consolidation and effective January 20, 1998, however, all mail room services were consolidated to a restricted area in a separate administration building. Sweatt's complaint alleged that the prison's mailing policies and procedures that were in effect subsequent to this consolidation, combined with certain actions (or inactions) taken by the Defendants, interfered with his access to the courts, and that the mail procedures "perhaps could cause [Sweatt] to lose his pending cases" due to mailing delays.

Sweatt alleged that official TDOC policies and procedures provided for the mailing of outgoing "legal mail" from indigent inmates, whereby the institution paid for the costs of postage upon the execution of a "personal withdrawal request" by the inmate (so that the funds could be removed from his trust account when the funds became available). He further alleged that he is an indigent inmate who is entitled to the costs of postage for legal mail upon the execution of a personal withdrawal request. According to his complaint, some conflict arose either from the TDOC's policies and procedures or from the implementation of these policies such that the Defendants denied Sweatt the costs of postage for legal mail. More specifically, he alleged that the Defendants denied Sweatt the costs of postage for documents that were required to be "served upon each of the parties" under Tennessee Rule of Civil Procedure 5 in either this lawsuit or other lawsuits. He explained that certain legal mail had been characterized as "privileged mail," and that he

wrongful act be committed, shall be liable to the party injured . . . for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented . . . .

42 U.S.C.S. § 1986 (1989).

had been required to pay the postage of such privileged mail without the benefit of executing a personal withdrawal request. He does *not* allege, however, that he was ever prevented from mailing or unable to mail legal mail as a result of the Defendants' actions. He simply maintains that the Defendants' actions, which caused mailing delays, "could cause" his lawsuit(s) to be dismissed.

His original complaint simply sought injunctive relief from future violations of his civil rights, asserting that such injunctive relief "could stop confusion," and he did not assert any claim for damages. However, on March 23, 1998, Sweatt filed a motion for leave to file an amended complaint, which was later granted by the trial court, along with a copy of the amended complaint. The amended complaint asserted additional claims for relief against each of the Defendants, though it still simply maintained that the alleged conduct and procedures "could" detrimentally affect his pending lawsuits. In addition to the injunctive relief that was sought in the original complaint, the amended complaint also sought a declaratory judgment that Sweatt's rights had been violated, compensatory damages for mental or emotional injury, and punitive damages.

In April 1998, the Defendants moved for the dismissal of Sweatt's action. They asserted that Sweatt's complaint should be dismissed based upon a failure to comply with Tennessee Code Annotated sections 41-21-801 *et seq.*,[4] and that Sweatt's complaint failed to state a claim upon which relief can be granted. Subsequently, Sweatt filed a motion for continuance, seeking time to conduct discovery. Moreover, Sweatt later filed another related motion, which he titled "Motion for Extension of Time for the Completion of Requested Discovery from Defendants." On July 6, 1998, the trial court entered an order that granted Sweatt's motion to amend his complaint, denied Sweatt's motion(s) for continuance to allow discovery, and granted the Defendants' motion to dismiss. On appeal, Sweatt asserts that the trial court erred by not affording him additional time to conduct discovery, and that the trial court erred in dismissing his action.

---

4. Tennessee Code Annotated title 41, chapter 21, part 8, which is titled "Lawsuits by Inmates," pertains to claims brought by inmates "in which an affidavit of inability to pay costs is filed with the claim by the inmate." See Tenn. Code Ann. § 41-21-802 (1997).

4

**Analysis**

A. Continuance and Discovery

In this case, Tennessee Code Annotated section 41-21-804(d) required the trial court to suspend all discovery upon the filing of a motion to dismiss asserting that a claim is frivolous or malicious. Tenn. Code Ann. § 41-21-804 (1997). Section 41-21-804 sets forth three factors for courts to consider in determining whether a claim is frivolous or malicious. These factors are "whether or not: (1) The claim has a chance of success; (2) The claim has a basis in law and in fact; and (3) The claim is substantially similar to a previous claim filed by the inmate in that the present claim arises from the same operative facts." Tenn. Code Ann. § 41-21-804(b) (1997). Because Defendants' motion to dismiss was based, in part, upon the assertion that Sweatt's claim had no basis in law and in fact (*i.e.*, that Sweatt failed to state a claim upon which relief can be granted), the motion to dismiss amounted to one that asserted Sweatt's claim to be frivolous or malicious. Accordingly, the trial court was required to suspend all discovery, and this issue has no merit.

B. Dismissal / Exhaustion of Remedies

Tennessee Code Annotated section 41-21-806(a) sets forth the following requirement in lawsuits filed by inmates:

> An inmate who files a claim that is subject to review by the grievance committee established by the department shall file with the court an affidavit stating the date that the grievance was filed and the date the final decision was received by the inmate with a copy of the final decision from the grievance committee.

Tenn. Code Ann. § 41-21-806(a) (1997). The trial court's order granting dismissal states that, while Sweatt filed an affidavit for the intended purpose of satisfying section 41-21-806(a), he failed to attach a copy of the grievance committee's final decision. The trial court therefore dismissed Sweatt's lawsuit based, in part, upon Sweatt's failure to attach

5

"a copy of the final decision from the grievance committee."[5] Upon review of the record before this Court, we note that, among other documents, a form document titled "Inmate Grievance Response" was attached to Sweatt's affidavit. This TDOC form document provided for: the grievance committee's "proposed response," which was completed and signed; the warden's agreement or disagreement, which was completed and signed; a questionnaire to the grievant (Sweatt) inquiring as to whether he wished to appeal from the warden's response to the TDOC commissioner, which was *declined* and signed; and the commissioner's response, if appropriate, which was not completed and signed due to Sweatt's failure to appeal.[6]

Section 41-21-806(a), which is quoted above, serves to help ensure that all administrative remedies have been exhausted prior to the exercise of judicial review. However, because Sweatt's suit is based solely upon federal claims for alleged violations of his constitutional and/or state statutory civil rights, his action is also subject to substantive limitations established under federal law, including a limitation on his right to bring such an action. Section 1997e(a) of Title 42 to the United States Code, as amended by the Prison Litigation Reform Act of 1996, establishes that "*[n]o action shall be brought with respect to prison conditions under . . . any . . . Federal law*, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted.*" 42 U.S.C.S. § 1997e(a) (Supp. 1998) (emphasis added). "In

_____

5. The trial court's order stated the following:

> [Sweatt] also filed on March 23, 1998, "Separate Affidavit Under Tennessee Code Annotated § 41-21-806 . . . . He indicates that a copy of the grievance committee's final decision was attached to the affidavit. The Court finds that a copy of his grievance along with the response [sic] the prison officials and a copy of the minutes were attached. There is, however, no copy of the grievance committee's final decision attached to the affidavit. . . . .
>     This claim is also dismissed as [Sweatt] has failed to file the final decision of the grievance committee. The Court is unaware of whether or not all administrative procedures have been exhausted because the Court does not have before it a final decision of the grievance committee. Although, [Sweatt] spends a lot of time dealing with the grievance, [Sweatt] finally states that his grievance was upheld by the grievance committee.

6. The Inmate Grievance Response stated that the Grievance Committee recognized that the Federal Rules of Civil Procedure require service upon parties, which would make any such documents "legal mail," and that the committee found the definitions of "legal mail" and "privileged mail" as defined in TDOC policies to be ambiguous. The document then indicated that the Warden disagreed with the committee's *proposed* response because the "current procedures do not prohibit anyone from sending mail to anyone they desire for any reason." Thereafter, the document inquired as to whether Sweatt wished to appeal the *Warden's* unfavorable response. Sweatt declined and affixed his signature to his response.

light of the plain mandatory language of the statute regarding exhaustion of remedies, the legislative purpose underlying the plain language, and the sound policy on which it is based, . . . prisoners filing . . . cases involving prison conditions must allege and show that they have exhausted *all* available state administrative remedies." Brown v. Toombs, 139 F.3d 1102, 1104 (6th Cir. 1998) (emphasis added). See also White v. McGinnis, 131 F.3d 593 (6th Cir. 1997) (holding that a district court's *sua sponte* dismissal of a prisoner's civil rights suit, which sought declaratory and injunctive relief and compensatory and punitive damages against several individual defendants, was proper where the prisoner filed an administrative grievance regarding his claims, but did not pursue an administrative appeal of the denial of the grievance). In the instant case, Sweatt's own affidavit, with its attached Inmate Grievance Response, indicates that Sweatt failed to exhaust all available state administrative remedies, because he had been afforded the opportunity to appeal the Warden's unfavorable response to the TDOC's commissioner, yet failed to do so. Therefore, the dismissal of Sweatt's action was proper, and we pretermit further analysis of other issues addressed by the parties relating to dismissal.

**Conclusion**

Accordingly, we affirm the trial Courts dismissal. Costs of this appeal are taxed against Antonio Sweatt.

_____
HIGHERS, J.

7

CONCUR:


_____
FARMER, J.


_____
LILLARD, J.